UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

KATHLEEN BUFFINGTON and        )
ASHLEY BUFFINGTON,             )
                               )
            Plaintiffs,        )
                               )
        v.                     )    Case No.  2:07-CV-176
                               )
MUNSTER MEDICAL RESEARCH       )
FOUNDATION, INC., and          )
PRAIRIE STATES ENTERPRISES,    )
INC.,                          )
                               )
            Defendants.        )


<u>OPINION AND ORDER</u>

        This matter is before the court on defendant Prairie States
Enterprises, Inc.'s Motion for Summary Judgment (DE 28) filed
February 6, 2008; plaintiffs' Motion for Partial Summary Judgment
as to Prairie States and Munster Medical Research Foundation (DE
35) filed April 14, 2008; defendant Munster Medical Research
Foundation, Inc.'s Motion for Partial Summary Judgment (DE 41)
filed May 13, 2008; defendant Munster Medical Research
Foundation, Inc.'s Motion for Summary Judgment (DE 46) filed June
30, 2008; defendant Munster Medical Research Foundation, Inc.'s
Motion to Strike Plaintiffs' Statement of Genuine Issues in
Opposition to Motion for Summary Judgment of Munster Medical
Research Foundation, Inc., (DE 51) filed August 21, 2008; and
plaintiffs' Motion to Strike Affidavit of Munster Medical
Research Foundation, Inc. Witness Ferracane (DE 52) filed August
21, 2008.

1

For the reasons set forth below, the Motion for Summary Judgment filed by defendant Prairie States Enterprises, Inc. (DE 28) is **GRANTED**; the Motion for Partial Summary Judgment as to Prairie States and Munster Medical Research Foundation filed by plaintiffs (DE 35) is **DENIED**; the Motion for Partial Summary Judgment filed by defendant Munster Medical Research Foundation, Inc. (DE 41) is **GRANTED**; the Motion for Summary Judgment filed by defendant Munster Medical Research Foundation, Inc. (DE 46) is **GRANTED**; the Motion to Strike Plaintiffs' Statement of Genuine Issues in Opposition to Motion for Summary Judgment filed by defendant Munster Medical Research Foundation, Inc. (DE 51) is **GRANTED**; and the Motion to Strike Affidavit of Munster Medical Research Foundation, Inc. Witness Ferracane filed by plaintiffs is **DENIED as moot**.

## Background

Kathleen Buffington ("Kathleen") is employed by Munster Community Hospital. (Pltfs' Answers to Interrogatories, #1 ) As such, she is a member of the Community Hospital Employee Health Plan ("Plan"), which is administered by Munster Medical Research Foundation, Inc. ("MMRF") and governed by the provisions of ERISA. (Plan Document, Exhibit B, Pltfs' Designation of Material Fact, p. 5 ) Kathleen's daughter, Ashley Buffington ("Ashley"), was a dependant minor under the medical coverage section of the Plan. (MMRF Response to Request for Admissions, p. 2) Prairie States Enterprises, Inc. ("PSE") is the claims administrator for medical and dental claims submitted under the Plan. (Plan

2

Document, p. 94)  The Plan Document states:

> The plan administrator shall administer the Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures.  It is the express intent of this Plan that the plan administrator shall have maximum legal discretionary authority to conclusively construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Covered Person's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan administrator will be final and binding on all interested parties.  No person shall be entitled to benefits under the Plan unless the plan administrator has determined entitlement thereto.

(Plan Document, p. 92.)  The Plan contains exclusions,

particularly #53 which is pertinent to the Buffingtons' claim:

> Services, supplies, care, or treatment to a Covered Person for Sickness or Injury resulting from that Covered Person's taking of or being under the influence of any controlled substance, drug, hallucinogen, or narcotic not administered on the advice of a Physician or as a result of the Covered Person's illegal use of alcohol, or a result of the Covered Person engaging in an illegal act or occupation; by committing or attempting to commit any crime, criminal act, assault, or other felonious behavior; or by participating in a riot or public disturbance, whether sane or insane.

(Pltfs' Exh. A, p. 51)

On November 5, 2006, at 1:59 a.m., Ashley was injured and

required medical treatment.  (Pltfs' Interrog. #4, Pltfs' Exh. A,

Admin. Claim File p. 5)  In submitting her claim for

reimbursement, Kathleen described the accident:

> She was involved in an altercation at The End Zone Bar & Grill in Hobart, Indiana.  She approached a young man from behind.  As she swung at him, he stuck his arm out to keep her from hitting him.  There was a glass in his hand, as it touched her face it broke.  That sent pieces of glass into her face.

(Pltfs' Exh. A, Admin. Claim File p. 3)  The "young man" who
struck Ashley was charged with Aggravated Battery of Ashley by
the Hobart Police Department.  (Pltfs' Exh. A p. 5)  Upon testing
at the hospital, Ashley was found to have blood alcohol content
of 169 mg/dl, more than twice the level considered under the
influence, and tested positive for cocaine and cannabinoids.
(MMRF's Designation of Evid., Exh. 3)

   PSE denied  payment of the claim for medical benefits under
the Plan, repeatedly reciting, "Injuries incurred while engaging
in an illegal act by committing or attempting to commit any
crime, criminal act or assault is [*sic*] not covered."  (MMRF's
Designation of Evid., Exh. 4, p. 5) Kathleen wrote PSE a letter
dated February 13, 2007, requesting a review of that denial:

> Ashley committed no crime, nor was she ever
> charged with committing a crime.  Ashley is seventeen
> years old and a minor.  She made some bad decisions the
> night she was injured. . . .
> The End Zone should have never let Ashley in their
> establishment nor should they have served her alcohol.
> Ashley is a minor.  .  .  .
>      .  .  .
> This was an accident that should have never
> happened.

(MMRF's Designation of Evid, Exh. 3, part 2, p. 10)  In a letter
dated February 21, 2007, PSE responded that it provides "third-
party administrative services for [the Plan] according to the
*provisions, limitations and exclusions in the Health Care Plan*."
(MMRF Des. of Evid., Exh. 3, part 2, p. 12)(emphasis in original)
PSE's letter then informed Kathleen that her appeal would be
reviewed at the Appeals Committee scheduled for April 27, 2007, a

date which was a typographical error on the part of the author. (Reichelsdorfer Depo. p. 22) The Appeals Committee actually met to review the initial denial at its next regular meeting, February 27, 2007. (MMRF Exh. 3, part 2, p.15 ) The short minutes of the meeting disclose a review of letters, medical records, the police report, and the Plan, restate that Ashley was underage in a bar at the time of the incident and had illegal drugs in her system, and repeat Kathleen's account of the assault. (Exh. 3, part 2, p. 16) The denial was upheld:

> Under plan exclusions, pg 51, #53, []Services, supplies, care or treatment to a covered person for sickness or injury resulting from that covered person's taking of or being under the influence of any controlled substance, drug, hallucinogen or narcotic *or as a result of the covered person's illegal use of alcohol (member is a minor) or as a result of the covered person engaging in an illegal act (assault)*.

(Exh. 3, part 2, p.16)(emphasis added). This affirmation of denial was noted in PSE records, and the Buffingtons were informed via a letter dated March 5, 2007. (Admin. Record, Exh. A, p. 34)

Prior to receipt of this letter, counsel to the Buffingtons wrote a letter to PSE confirming the April 27, 2007, appeal hearing, requesting copies of the Plan and all facts involved in the denial of the claim, and notifying PSE of the penalties for refusal to provide a copy of the Plan. (Pltfs' Exh. F) Following receipt of, and likely as a result of, counsel's letter, the Appeals Committee revisited the Buffingtons' claim on March 27, 2007. (MMRF's Exh. 3, pp. 17-18) The minutes report:

> Jan received a second letter from the law office in
> regards to denial of coverage of services for member due
> to her illegal activity per plan language.  Case is
> currently pending decision of company to reverse PSE's
> decision based on plan language.  Until we hear from
> company for over-ride we can not process Claim.  Jan will
> continue to encourage company for decision on appeal over
> ride.

(MMRF's Exh. 3, p. 18)  Later that same day, the appeal was

revisited by five members of the committee along with two

"guests" included via conference call, both MMRF personnel.

(Pltfs' Exh. A, p. 16)  The minutes report:

> Discussion of appeal denial of reimbursement for
> hospitalization/flight for life r/t recent injuries
> sustained.  Denied per plan exclusion #53-based on
> clinical documentation, J. Relinski and T. Ferracane in
> agreement with decision.  Documentation-police report, ER
> clinical records, mother's documentation, . . .  ER
> records show + tests for alcohol, cocaine, and marijuana.
> . . .

(MMRF's Exh. 3, p 20)

The Buffingtons filed a Complaint in Lake Superior Court on

May 2, 2007, and MMRF removed it to federal court pursuant to

federal question jurisdiction based on the Employee Retirement

Income Security Act ("ERISA").  (DE 1-2)  The Complaint alleges

arbitrary and capricious deprivation of benefits, failure to

provide requested records in violation of ERISA, and retaliation

in the form of discrimination against a plan participant.

(Complaint, ¶¶ 3, 7, 10)  On June 22, 2008, counsel to the

Buffingtons sent a letter directly to MMRF requesting from MMRF

plan documents under 29 U.S.C. § 1132(c).  (MMRF's Exh. 2)  MMRF

responded by providing the full administrative record of Ashley's

claim on September 13, 2007.  (MMRF's Exh. 3)

PSE filed a Motion for Summary Judgment (DE 28) which argues that only a Plan Administrator can be held liable for failure to produce documents and for wrongful denial of benefits and that only the plan participant's employer can be held liable for any adverse employment action or alleged retaliation. The Buffingtons countered by filing a Motion for Partial Summary Judgment (DE 35) as to the failure to produce requested documents under § 1132(c) against both MMRF and PSE. MMRF responded to this motion with its own Motion for Partial Summary Judgment (DE 41) as to the § 1132(c) document claims due to the Buffingtons' failure to request properly the documents from MMRF. Afterward, MMRF filed its Motion for Summary Judgment (DE 46) as to all other issues, asserting that the denial of benefits was neither arbitrary nor capricious, but was proper in light of Ashley's illegal acts on the evening in question, and that there is no factual basis to support any claims of retaliation or discrimination.

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Williams v. Excel Foundry & Machine, Inc*., 489 F.3d 309, 310 (7th Cir. 2007); *Treadwell v. Office of the Illinois*

*Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L. Ed.2d 142, 155 (1970); *Lawrence* v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc*., 21 F.3d 146, 148 (7th Cir. 1994). *See also Miller v. Borden, Inc*., 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986); *see also Scott v. Harris,* – U.S. –, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp.*, 477 U.S. at 322-323, 106 S. Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc*., 327 F.3d 569, 573 (7th Cir. 2003).

Beginning with PSE's Motion for Summary Judgment, PSE

maintains that ERISA does not permit PSE, in its limited capacity
as a claims administrator, to be held liable.  First, PSE avers
that only the Plan administrator, namely MMRF, and not a third-
party claims administrator, can be liable for failure to produce
documents pursuant to § 1132(c).  This section of ERISA allows a
court, in its discretion, to order penalties of up to $100 per
day as relief to a participant if an administrator "fails or
refuses to comply with a request for any information which such
administrator is required by this subchapter to furnish to a
participant or beneficiary."

The statute clearly addresses an "administrator's" refusal
to supply requested information.  Likewise, the Seventh Circuit
has been confronted with this situation and has taken the statute
at  its plain meaning.  *See **Anweiler v. American Electric Power
Service***, 3 F.3d 986, 994 (7th Cir. 1993)("The district court
correctly concluded that [the life insurance claims
administrator] was not an administrator of the plan and was not
liable for penalties under 29 U.S.C. § 1132(c).").  ERISA defines
the term "administrator" as "(i) the person specifically so
designated by the terms of the instrument under which the plan is
operated," with fall-back options if none is designated.  29
U.S.C. § 1002(16)(A); *see **Anweiler v. American Elec. Power
Service Corp.***, 836 F. Supp. 576 (N.D. Ind., 1992) ("Since [the
insurer] is clearly not the administrator, they are entitled to
summary judgment with respect to [the section 1132(c) failure to
supply documents issue]."); *see also **Pisek v. Kindred Healthcare,***

10

*Inc. Disability Insurance Plan*, 2007 WL 2068326 (S.D. Ind. 2007)(holding that only the plan administrator can be liable for such statutory penalties); *Mondry v. American Family Mutual Insurance Co.*, 2006 WL 2787867 (W.D. Wis. 2006); *Coffman v. Guarantee Life Ins. Co.*, 2000 WL 798473 (E.D. La., 2000) ("Section 502(c) applies only to a plan administrator's duty to furnish information."); *Cline v. Indust. Maintenance Engineering & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000) (determining that only a plan administrator can be held liable for failing to comply with ERISA reporting and disclosure requirements); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296 (9th Cir. 1989); *Mitchell v. First Unum Life Ins. Co.*, 65 F. Supp. 2d 686 (S.D. Ohio 1998).

Here, the Plan itself makes clear that PSE is a claims administrator, while MMRF is listed as the Plan Sponsor and Administrator. Likewise, the Plan Document lists the responsibilities for the Plan Administrator to include the maintenance of Plan documents and all other records pertaining to the Plan and the performance of all necessary reporting as required by ERISA. Accordingly, any claims under Section 502(c) of ERISA for failure to furnish documents to the Buffingtons cannot be pursued against PSE.

Second, PSE contends that only the Plan and the Plan administrator, MMRF, can be liable for a wrongful denial of benefits. Again, the Seventh Circuit has addressed this issue squarely. In *Mote v. Aetna Life Insurance Co.,* 502 F.3d 601, 610-11 (7th Cir. 2007), the court reviewed the limited

11

circumstances upon which a plan participant can seek redress for denied benefits from anyone other than the Plan.  In limited circumstances where the employer and the plan itself are named interchangeably in plan documents, benefits may be sought from both the plan and the plan administrator/employer.  *Mote*, 502 F.3d at 611;  *see also* *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864 (7th Cir. 2001) ("We continually have noted that ERISA permits suits to recover benefits only against the Plan as an entity." (citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996));  *Mein v. Carus Corporation*, 241 F.3d 581 (7th Cir. 2001) (discussing proper defendants in ERISA suits seeking benefits).  It cannot be said that such benefits may be sought from a third party defendant hired to review claims under the Plan.

The Buffingtons counter with cases – one, *Koenig v. Metropolitan Life Ins. Co.*, 1992 WL 317190 (N.D. Ill., 1992), from within the Seventh Circuit –  where a third-party claims processor was sufficiently alleged to be a fiduciary in order to withstand summary judgment.  There the district court found that the third party had not clearly shown that it possessed *no* discretionary authority or control over the insurance plan in order to escape liability.  *Koenig*, at *3 (emphasis in original). The Buffingtons cite the language in the Plan Document which names PSE as the named fiduciary for medical and dental claims determinations and further argue that the fiduciary responsibilities which PSE exercises when managing MMRF's claims

12

give rise to fiduciary responsibility to the Plan participants. However, this is not correct. *See **Klosterman v. Western General Management, Inc.**,* 32 F.3d 1119 (7th Cir. 1994)(holding claims administration company was not a fiduciary for purposes of ERISA where it does not hold complete authority to grant/deny benefits, but performs only ministerial functions)("[The plan], not [the claims administrator], retained the authority to make the ultimate decisions in all doubtful or contested claims and all claims in which legal actions were proceeding. . . . [T]he activities and responsibilities of [the claims administrator] in administering claims as a matter of law do not amount to discretionary authority and it is not a fiduciary."). Here, PSE has demonstrated that it has no discretionary authority in deciding claims. The Plan Document contains the language conveying full discretionary authority on MMRF, and not PSE.

Likewise undercutting the Buffingtons' claim that PSE breached a fiduciary duty to them in the denial of their medical claim, the Seventh Circuit has declined to impose relief for such a cause of action where the true argument concerns an "ordinary benefit claim[]"which has its own avenues for relief. *See **Herman v. Central States, Southeast and Southwest Areas Pension Fund**,* 423 F.3d 684, 695 (7th Cir. 2005)(holding there was no breach of fiduciary duty by trustees in individual benefit determinations where the trustees are "implement[ing] faithfully the provisions of the plan as written")(citing ***Varity Corporation v. Howe***, 516 U.S. 489, 514-15, 116 S. Ct. 1065, 134 L.Ed.2d 130 (1996)("[W]e

should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"). Therefore, a breach of fiduciary duty claim by the Buffingtons against PSE as the claims administrator is inappropriate.

Third, PSE disavows any of the Buffingtons' claims of interference with protected rights, whether retaliatory or discriminatory in nature, because only the participant's employer or the Plan can be liable for such claims. Section 510 of ERISA prohibits such interference:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . of this title . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . . It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter . . . .

29 U.S.C. § 1140. The provision is meant to prevent employers from using employment status as a means of circumventing promised benefits. *See **Ingersoll-Rand Company v. McClendon***, 498 U.S. 133, 143, 111 S. Ct. 478, 485, 112 L.Ed.2d 474 (1990) (finding such circumvention in an employee's wrongful discharge based on employer's desire to avoid pension fund contributions). To find a violation under this section, "a fundamental prerequisite . . . is an allegation that the employer-employee relationship . . .

14

was changed in some discriminatory or wrongful way." ***Deeming v. American Standard, Inc.***, 905 F.2d 1124, 1127 (7th Cir. 1990); *see also **Marrs v. Motorola,** Inc.*, 2006 WL 695697 (N.D. Ill., 2006)(granting summary judgment where employment relationship found unchanged by benefits plan amendment); ***McGath v. Auto-Body North Shore, Inc.***, 7 F.3d 665 (7th Cir. 1993)(relying on *Deeming* to find same). The Buffingtons have not alleged any such change in Kathleen's employment with Munster Community Hospital, and PSE is not a party to the employer-employee relationship.

Because PSE is not the Plan, the Plan Administrator, or the employer of Kathleen, it cannot be liable for the failure to produce documents, the wrongful denial of benefits, or any adverse employment actions as alleged in the Complaint. Therefore, PSE's Motion for Summary Judgment is **GRANTED**.

Turning to the Buffingtons' Motion for Partial Summary Judgment as to the defendants' failure to provide documents under § 1132(c), this claim fails against PSE for the reasons stated above, and is **DENIED as moot** due to the entry of summary judgment of all claims against PSE. As to a Plan administrator, section 104(b)(4) requires the production of certain plan documents upon request by a participant, 29 U.S.C. § 1024(b)(4), and imposes a penalty of up to $100 per day for failure to do so. 29 U.S.C. § 1132(c); ***Jones v. UOP***, 16 F.3d 141, 144 (7th Cir. 1994). In ***Jones***, Judge Richard Posner set the limits of § 1132(c), both *who* can be liable for failure to produce – only the plan administrator – and *when* liability commences – upon receipt of a

document request from the participant.  *Jones*, 16 F.3d at 144.

Judge Posner concluded:

> The statute is plain and severe . . . .  If the plan
> designates an administrator and the [third party] makes
> no effort to impede participants' access to him, we
> cannot see what purpose would be served by the imposition
> of statutory penalties.

*Id*. at 145.  In *Verkuilen v. South Shore Building and Mortgage
Company*, 122 F.3d 410, 412 (7th Cir. 1997), Judge Frank
Easterbrook noted that "[t]he procedure for requesting
information is so simple, and the statutory rules for response so
explicit, that we have insisted on strict compliance by both
participant and administrator."  In *Verkuilen*, the complaint was
filed before any written document request was made to the plan
administrator, just as in this case.  122 F.3d at 411.  ERISA's
plain meaning in allowing penalties for a failure to produce
documents contemplates a written request, followed by thirty days
without compliance, and culminating in a civil suit for such
documents.  Judge Easterbrook spoke directly to this matter:

> If litigation is in progress – a claim to recover unpaid
> benefits, for example – the participant still may send a
> written request, and if the plan administrator balks the
> participant may amend the complaint to add a penalty
> claim.

*Verkuilen*, F.3d at 412.

Here, the Complaint alleging MMRF's failure to respond to a
document request was filed on May 2. 2007, yet no proper request
was made to the Plan administrator, MMRF, until June 22, 2007.
Following *Verkuilen*, no controversy concerning the §1132(c) claim
existed at the time of the Complaint.

The Buffingtons argue that PSE, as an agent of MMRF, was required to forward document requests on to the Plan, citing to **DeBartolo v. Blue Cross Blue Shield of Illinois**, 375 F. Supp. 2d 710 (N.D. Ill., 2005). The agency argument used to assert a § 1132(c) claim in **DeBartolo**, however, failed. *See* 375 F. Supp. 2d at 715 ("[The defendant] was not an actual agent of the [plan administrator] *in this regard*, nor did it have apparent agency." (emphasis added)). The holding in **DeBartolo** further clarified that for a § 1132(c) claim, agency was irrelevant, since the ERISA statute provides for fines for erring parties "in the court's discretion," and the court did not find that the misdirected document affected the facts of the claim denial. *Id*. (citing 29 U.S.C. § 1132(c)); *see also* **Kamler v. H/N Telecommunication Service, Inc.**, 2001 WL 740516 (N.D. Ill 2001)(reiterating that a participant must send a written request to the plan administrator to trigger § 1132(c) obligations)("[Participant] never contacted [plan administrator] for information. . . . [He] has no excuse for not requesting documents from [the plan administrator].").

Similarly, PSE may act under the Plan Document as an agent of MMRF, but the Plan clearly limits this agency to claims determinations. The Plan Document designates that MMRF is the plan administrator and the party responsible for the maintenance of all Plan documents and records. Like the plaintiff in **Kamler**, the Buffingtons have no excuse for not requesting documents from MMRF. All claims against MMRF for the failure to produce plan

documents under § 1132(c) must fail.  Though MMRF is the plan
administrator and is solely responsible for the document
production, the simple procedures to request them were not
followed.  Prior to commencement of this cause of action, no
requests for documents were made to MMRF.  Hence, the
Buffingtons' Motion for Partial Summary Judgment as to MMRF is
**DENIED**, and MMRF's Motion for Partial Summary Judgment on the
same issue is **GRANTED**.

Before discussion of MMRF's Motion for Summary Judgment, the
two Motions to Strike must be considered.  First, MMRF moves to
strike the Statement of Genuine Issues filed by the Buffingtons
nineteen days after their response to the Motion for Summary
Judgment was filed.  Local Rule 56.1 is clear in its direction:

> . . . Any party opposing the motion [for summary
> judgment] shall, within thirty (30) days from the date
> such motion is served upon it, serve and file any
> affidavits or other documentary material controverting
> the movant's position, *together with a response that
> shall include in its text or appendix thereto* a
> "Statement of Genuine Issues" setting forth, with
> appropriate citations to discovery responses,
> affidavits, depositions, or other admissible evidence,
> all material facts as to which it is contended there
> exists a genuine issue necessary to be litigated.
> (emphasis added).

MMRF objects to the separate belated filing of the Buffingtons'
Statement of Genuine Issues in Opposition to Motion for Summary
Judgment.  The Buffingtons counter MMRF's Motion to Strike their
late filing by pointing out that "the <u>content</u> of [the Statement
of Genuine Issues] was already timely filed of record and is
contained in [the Buffingtons'] "Memorandum of Law in Opposition

to Motion for Summary Judgment," and that the Statement of
Genuine Issues "is merely presented for the convenience of the
Court and counsel."  Plaintiffs' Response to Motion to Strike, ¶¶
4-5(emphasis in original).  The court will rely upon the text of
the timely response memorandum, the issues discussed and cited
therein, and the attached designations of material fact that were
filed together with the response in compliance with the local
rule.  Accordingly, MMRF's Motion to Strike Plaintiffs' Statement
of Genuine Issues in Opposition to Motion for Summary Judgment of
Munster Medical Research Foundation, Inc. (DE 51) is **GRANTED**.

Second, the Buffingtons dispute the Affidavit of Anthony
Ferracane submitted by MMRF in reply to its Motion for Summary
Judgment.  The Motion to Strike the affidavit declares it
untimely, self-serving, speculative, and contrary to discovery
responses directed to MMRF.  Plaintiffs' Motion to Strike
Affidavit, ¶¶ 2-4.  To support a claim that has been challenged
on summary judgment, an affidavit may not be based upon "self-
serving statements . . . without factual support in the record."
***Thanongsinh v. Board of Education***, 462 F.3d 762, 781 (7th Cir.
2006)(*quoting **Butts v. Aurora Health Care, Inc***., 387 F.3d 921,
925 (7th Cir. 2004).  Rather, Federal Rule of Civil Procedure
56(e) requires that an affidavit must be  "made on personal
knowledge [and] set forth facts as would be admissible in
evidence."  "Rule 56 demands something more specific than the
bald assertion of the general truth of a particular matter,
rather it requires affidavits that cite specific concrete facts

establishing the existence of the truth of the matter asserted."
*Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983).

The Buffingtons argue that the Ferracane affidavit is self-serving and speculative, but they fail to identify any particular assertion in the affidavit as such or describe how such statement is speculative.  In poring over the motions, briefs, depositions, affidavits, and plan documents embodied in this opinion, the court notes nothing stated in the Ferracane affidavit which had not already been asserted at some prior point in the litigation and discovery.  That the information asserted comes from Ferracane himself rather than from a co-worker's deposition testimony or a brief does not make it self-serving.  Furthermore, the affirmation of the claims denial was evident by the result of the conference call, and any statement by Ferracane reiterating this is simply a statement of the obvious.

With respect to summary judgment replies, Local Rule 56.1(a) only states, "Any reply shall be filed within fifteen (15) days from the date the response is served."  It does not address the filing of additional materials simultaneously with the reply.  Such a situation was addressed in *Balderston v. Fairbanks Morse Engine Division of Coltec Industries*.  328 F.3d 309 (7th Cir. 2005).  The Seventh Circuit looked to Rule 56(c), noting, "There is no blanket prohibition from filing additional affidavits when a movant for summary judgment files a reply brief following a nonmovant's response."  *Balderston*, 328 F.3d at 318.  Consideration turned to whether the new information contradicted

prior sworn testimony submitted with the response and represented entirely "new" arguments.  *Balderston*, 328 F.3d at 319.  Noting that the district court "carefully took into consideration all of the permissible evidence in determining which facts were material and undisputed," the refusal to strike the reply affidavits was affirmed.

The court cannot find any argument or issue raised by Ferracane's affidavit that would be considered "new" and would make its "untimeliness" problematic.  The affidavit simply reiterates the affiant's position with MMRF and his responsibilities within the administration of the Plan, as well as his participation in the claim decision in question.  This information comports with deposition testimony by Relinski submitted by the Buffingtons in support of their response.  As such, the argument that the affidavit is untimely, as well as the claim the Ferracane was not previously identified in prior discovery responses, fails.  Considering the timing and the facts advanced by the affidavit, the Motion to Strike is **DENIED as moot.**

The parties disagree on the standard of review that the court must use in reviewing the denial of the claim, the arbitrary and capricious standard or *de novo* review.  The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

to construe the terms of the plan." ***Firestone Tire & Rubber v.
Bruch***, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L.Ed.2d 80 (1989).
Circuit courts differ in determining just how a benefit plan
gives the administrator that discretionary authority, but only
the Seventh Circuit's guidance is relevant here.[1]  The critical
question is whether the plan gives its participants notice of who
reserves the discretion.  *See* ***Herzberger v. Standard Insurance
Co.***, 205 F.3d 327, 332 (7th Cir. 2000).  But a plan must go
further and must "indicate with the requisite minimum clarity
that a discretionary determination is envisaged." ***Diaz v.
Prudential Insurance Co. of America***, 424 F.3d 635, 637-38 (7th
Cir. 2005)(quoting ***Herzberger***, 205 F.3d at 331 (internal
quotations omitted). ***Diaz*** clarifies the test required to decide
whether *de novo* review or deferential review is appropriate,
concluding that plans which "communicate the idea that the

---

[1] The Buffingtons cite two cases from the Eighth Circuit which apply a different test for determining the standard of review, *Morgan v. Contractors, Laborers, Teamsters and Engineers Pension Plan*, 287 F.3d 716 (8th Cir. 2002), and *Woo v. Deluxe Corp.*, 144 F.3d 1157 (8th Cir. 1998).  Both reveal the Eighth Circuit's test, which allows for a less deferential standard of review where there has been "a serious procedural irregularity."  The Buffingtons argue that the typographical error that misinformed them as to the date of their claim appeal was such a procedural irregularity.  However, both *Morgan* and *Woo* make clear that the beneficiary must "show that the conflict or procedural irregularity has some connection to the *substantive decision reached*." *Woo*, 144 F.3d at 1161(emphasis added).  Considering that no matter the date upon which the claims appeal was heard, the substantive evidence of illegal alcohol and drug use in Ashley's medical records would have remained the same, neither the participants nor their counsel would have been allowed to attend, and the committee revisited the issue again one month later, coming to the same conclusion at yet another appeal, it cannot be said that the substantive decision was affected by the typo.  Further cites in this vein to Sixth, Ninth, and Eleventh Circuit decisions are disregarded after careful consideration, all of which are distinguishable from our facts here.  Regardless, this court sits in the Seventh Circuit and follows the lead of that court.

administrator not only has broad-ranging authority to assess
compliance with pre-existing criteria, but also has the power to
interpret the rules, to implement the rules, and even to change
them entirely" offer the approach leading to deferential review.
424 F.3d at 639.

Here, the Plan Document's language is plain and clear:  the
plan administrator, here MMRF, has "maximum legal discretionary
authority to conclusively construe and interpret" everything
necessary to avail themselves of the deferential review.  The
minutes of the appeals in fact noted that PSE awaited input from
MMRF if necessary, and included MMRF representatives in the last
meeting, where those representatives affirmed application of the
exclusion.  Thus, the arbitrary and capricious standard applies,
and "if the decision made by the administrator was made
rationally and in good faith, we will not second-guess whether
the decision is right." *Hightshue v. AIG Life Insurance Co.*, 135
F.3d 1144, 1147 (7th Cir. 1998)(quoting *Brown v. Retirement
Committee of Briggs & Stratton*, 797 F.2d 521,529 (7th Cir.
1986)(internal quotation omitted).

MMRF seeks summary judgment because the exclusion that was
applied is unambiguous and was applied in a straightforward way:
the denial was proper because Ashley committed illegal acts.
"The phrase 'illegal acts' has a plain meaning; it simply refers
to any activity contrary to law." *Tourdot v. Rockford Health
Plans, Inc.*, 439 F.3d 351, 354 (7th Cir. 2006)(citing *Sisters of
the Third Order of St. Francis v. SwedishAmerican Group Health*

23

*Benefit Trust*, 901 F.2d 1369, 1372 (7th Cir. 1990)). In *Tourdot*, the insured's claim was denied because he was driving drunk, an act which the legislature of Wisconsin deemed contrary to law. *Tourdot*, 439 F.3d at 354. Though he was not ticketed for the drunken driving offense, that fact "does not change the fact that he was indeed driving drunk, which is contrary to Wisconsin law." *Id*. Likewise, *Steele v. Life Insurance Company of North America*, 507 F.3d 593, 597 (7th Cir. 2007), reasons that a criminal activity occurs upon "commission of the proscribed acts *regardless of whether there later is a successful prosecution*." (emphasis added)(citing *Berg v. Bd. of Trs., Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund*, 725 F.2d 68, 70 (7th Cir. 1984)).

Here, the medical records report Ashley's blood alcohol content at more than twice the level of intoxication in Indiana and the presence of cocaine and marijuana in her system. Use of all three substances is illegal for a seventeen-year-old, and it is irrelevant to a claims determination whether she was charged with a crime. Similarly, it makes no difference that Ashley was the victim of an assault. Her victim status for one crime does not erase her own criminal activity revealed in her medical report.

The Buffingtons argue that the exclusion in question, that injury "resulting from" the influence of alcohol or drugs or "as a result of" illegal use of alcohol or drugs, requires the question of causation to be explored fully before any claim

24

decision can be made.  The beginning clauses of exclusion #53 use the "resulting from" language, but the later mentions of criminality and illegality in the exclusion do not.  Thus separated, the plan excludes a participant who has committed or attempted to commit any crime, criminal act, assault, or other felonious behavior.  MMRF, as the plan administrator and final arbiter of the Plan, has ratified this interpretation of the exclusionary language of #53.

Furthermore, hypothetical situations presented by the Buffingtons do nothing to generate arguable issues.  Not a single documented fact submitted by the Buffingtons supports the argument that Ashley was in the bar against her will.  Rather, the argument is controverted by the information that  Kathleen provided to the claims administrators to describe the events of that evening.

It is not the duty of the Plan administrators to interview witnesses and investigate the circumstances that led to Ashley's injuries.  The information available from the hospital records and Kathleen led to a straightforward decision by PSE and approved by MMRF:  a minor with alcohol, cocaine, and marijuana in her system had committed illegal acts, regardless of whether she was charged with a crime.  Any circumstances that may exonerate Ashley from criminality were not and, apparently, are not yet before the Plan administrators.  Therefore, it cannot be said that the final decision by the Plan affirming PSE's initial determination was arbitrary and capricious.

As to the Buffingtons' claims of retaliation and
discrimination against MMRF, section 510 of ERISA and relevant
caselaw expounding it above is applied here.  This provision is
intended to protect employees from any discharge or harassment
meant to prevent them from receiving their medical benefits.
*Dewitt v. Proctor Hospital*, 517 F.3d 944, 949 (7th Cir.
2008)(citing *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th
Cir. 1998)).  The analysis in *Dewitt* explored the reasons for the
participant's firing.  Here, there is no employment action
pleaded for the court to analyze.  The only employment
relationship in this case is that of Kathleen and Munster
Community Hospital, a relationship which remains unchanged to the
court's knowledge.

Applying the appropriate standard of review, the final
denial of the medical claims by MMRF based on the medical and
factual information available was not arbitrary and capricious.
Likewise, the Buffingtons' retaliation and discrimination claims
fail as a matter of law.   Accordingly, MMRF's Motion for Summary
Judgment is **GRANTED**.

_____

For the foregoing reasons, the Motion for Summary Judgment
filed by defendant Prairie States Enterprises, Inc. (DE 28) is
**GRANTED**; the Motion for Partial Summary Judgment as to Prairie
States and Munster Medical Research Foundation filed by
plaintiffs (DE 35) is **DENIED**; the Motion for Partial Summary
Judgment filed by defendant Munster Medical Research Foundation,

Inc. (DE 41) is **GRANTED**; the Motion for Summary Judgment filed by defendant Munster Medical Research Foundation, Inc. (DE 46) is **GRANTED**; the Motion to Strike Plaintiffs' Statement of Genuine Issues in Opposition to Motion for Summary Judgment filed by defendant Munster Medical Research Foundation, Inc. (DE 51) is **GRANTED**; and the Motion to Strike Affidavit of Munster Medical Research Foundation, Inc. Witness Ferracane (DE 52) filed by plaintiffs is **DENIED as moot**.

ENTERED This 30th day of September, 2008.

/s/ Andrew P. Rodovich
United States Magistrate Judge